FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2012 OCT 11  PM 2: 43

LORETTA G. WHYTE
CLERK



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SECOND SUPERSEDING INDICTMENT
FOR CONSPIRACY TO COMMIT MAIL FRAUD AND WIRE FRAUD,
MAIL FRAUD, WIRE FRAUD, MONEY LAUNDERING CONSPIRACY,
MONEY LAUNDERING, AND FALSE STATEMENTS ON TAX RETURN**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 11-157 |
| v. | * | SECTION: "C" (5) |
| DOMINICK FAZZIO and MARK J. TITUS | * | VIOLATIONS:18 U.S.C. § 2 |
| | | 18 U.S.C. § 371 |
| | * | 18 U.S.C. § 1341 |
| | | 18 U.S.C. § 1343 |
| | * | 18 U.S.C. § 1956(h) |
| | | 18 U.S.C. § 1956(a)(1)(B)(i) |
| | * | 26 U.S.C. § 7206(1) |
| | | 26 U.S.C. § 7206(2) |
| | * * * | |

The Grand Jury charges:

At all times relevant to this Second Superseding Indictment:

## COUNT 1
## CONSPIRACY

1.      Defendant DOMINICK FAZZIO was a practicing accountant and tax preparer

residing and doing business in the State of Louisiana who, at all relevant times, served as the

financial advisor and tax return preparer for numerous individuals and companies, including

companies wholly or partially owned by Hendrikus E. Ton, including Abe's Boat Rentals, Inc.

("Abe's"), Gulf Wells, Inc. ("Gulf Wells"), Heather Marine, Inc. ("Heather Marine"), and B&H

Marine Transportation Services ("B&H").  As the tax return preparer and financial advisor for



Ton's companies, FAZZIO had access to the corporate documents, payroll records, and financial records for those companies, including the financial records belonging to Heather Marine.

2.    Hendrikus E. Ton ("Hank Ton" or "Ton") was the sole owner of Abe's, Gulf Wells, and Heather Marine. Ton also owned approximately 51 percent of B&H. The office for Ton's businesses was located in Belle Chasse, Louisiana.

3.    Abe's provided services to the oilfield industry in the Gulf of Mexico, including transporting crews and supplies to oil rigs and maintaining natural resource production equipment on oil rigs. In 2006, Abe's employed approximately 75 people, and in 2007-2009, Abe's employed approximately 100 individuals.

4.    Gulf Wells entered into contracts with oil companies operating in the Gulf of Mexico to offer the services provided by Abe's. All individuals working for Gulf Wells, except Ton, were considered employees of Abe's for payroll and tax purposes and were paid by Abe's. Ton was the sole employee of Gulf Wells for payroll and tax purposes and the only individual who received a paycheck from Gulf Wells.

5.    B&H provided services similar to those offered by Abe's. All individuals working for B&H were considered employees of Abe's for payroll and tax purposes and were paid by Abe's.

6.    On or about April 22, 1998, Heather Marine filed a final corporate tax return indicating it had merged with Abe's. Since that time, Heather Marine has remained a dormant company for operational and tax purposes.

7.    At all relevant times, federal law required various employers, including Abe's, to withhold federal income taxes and Federal Insurance Contribution Act ("FICA") taxes from their

2

employees' wages.  Employers were also required to pay the matching employer's portion of

FICA taxes based on employee wages.  FICA taxes are used, among other things, to fund federal

programs including Social Security and Medicare.

8.      Abe's was required to make deposits of the withheld tax amounts and the

company's portion of FICA taxes to the Internal Revenue Service ("IRS") on a periodic basis.  In

addition, Abe's was required to file Employer's Quarterly Tax Returns on Form 941 with the IRS

to report, among other information, the total amount of wages and other compensation subject to

withholding that was paid during the quarter, the total amount of income taxes withheld, the

employer's and employees' shares of FICA taxes, and the total tax deposits.  A Form 941 is due

to be filed on or before the end of the month following the end of each calendar quarter.

9.      With respect to the aforementioned tax obligations of Abe's, Gulf Wells, and

B&H, Hank Ton was a "responsible" person, that is, he had the corporate responsibility to

collect, truthfully account for, and pay over to the IRS the withheld taxes and employer portion

of FICA taxes on the behalf of Abe's, Gulf Wells, and B&H.

### THE CONSPIRACY

10.      From on or about January 1, 2006, until on or about January 31, 2010, the

defendant,

### DOMINICK FAZZIO,

did knowingly combine, conspire, confederate, and agree together with Hendrikus E. Ton and

with others, known and unknown to the Grand Jury, to commit an offense against the United

States, to wit, to under-report income paid to employees of Abe's by paying part of those salaries

under the table in order to conceal the actual amount of income paid to employees of Abe's, Gulf

Wells, and B&H, thereby reducing the amount of federal income taxes withheld and FICA taxes due and owing to the United States of America by Abe's, in violation of Title 26, United States Code, Section 7202.

## THE OBJECT OF THE CONSPIRACY

11.     The object of the conspiracy was to enrich Abe's Boat Rentals, Gulf Wells, and B&H by illegally reducing the amount of tax paid to the federal government in the amount of approximately $3,582,451.92.

## THE MANNER AND MEANS OF THE CONSPIRACY

12.     The manner and means by which the conspiracy was carried out included, among others, the following:

a.     Ton would and did transfer a portion of the profits earned by Abe's, Gulf Wells, and B&H Marine into a bank account in the name of Heather Marine.

b.     Ton would and did pay a portion of the salaries of employees of Abe's out of a bank account in the name of Heather Marine.

c.     FAZZIO would and did prepare the Form 941s Abe's filed with the IRS on a quarterly basis, and in those Form 941s, FAZZIO would knowingly and willfully omit any wages paid to employees out of bank accounts in the name of Heather Marine.

d.     On a quarterly basis from on or about January 1, 2006 until on or about January 31, 2010, FAZZIO and Ton would and did cause those Form 941s to be submitted to the IRS.

e.      In preparing the annual tax returns for Abe's, Gulf Wells, and B&H, FAZZIO would and did illegally deduct the money transferred from Abe's, Gulf Wells, and B&H to Heather Marine as the cost of goods sold.

## **OVERT ACTS**

13.      In furtherance of the conspiracy and to accomplish its object, FAZZIO, Ton, and others committed the following overt acts, among others, in the Eastern District of Louisiana and elsewhere:

a.      On or about December 13, 2006, Ton filed a U.S. Corporation Income Tax Return, IRS Form 1120, for fiscal year 2005, wherein FAZZIO, who signed and prepared the form, fraudulently deducted $8,300,449 as the cost of goods sold in order to conceal transfers of money from Abe's to Heather Marine that were used to pay employee wages.

b.      On or about March 20, 2007, Ton filed a U.S. Corporation Income Tax Return, IRS Form 1120, for calendar year 2006, on behalf of Gulf Wells, wherein FAZZIO, who signed and prepared the form, fraudulently deducted $3,030,688 as the cost of goods sold in order to conceal transfers of money from Gulf Wells to Heather Marine that were used to pay employee wages.

c.      On or about March 20, 2007, Ton filed a U.S. Return of Partnership Income, IRS Form 1065, for calendar year 2006, on behalf of B&H, wherein FAZZIO, who signed and prepared the form, fraudulently deducted $546,498 as the cost of goods sold in order to conceal transfers of money from B&H to Heather Marine that were used to pay employee wages.

  d. On or about November 15, 2007, Ton filed a U.S. Corporation Income Tax Return, IRS Form 1120, for fiscal year 2006, on behalf of Abe's, wherein FAZZIO, who signed and prepared the form, fraudulently deducted $13,140,296 as the cost of goods sold in order to conceal transfers of money from Abe's to Heather Marine that were used to pay employee wages.

  e. On or about February 20, 2008, Ton filed a U.S. Corporation Income Tax Return, IRS Form 1120, for calendar year 2007, on behalf of Gulf Wells, wherein FAZZIO, who signed and prepared the form, fraudulently deducted $3,165,072 as the cost of goods sold in order to conceal transfers of money from Gulf Wells to Heather Marine that were used to pay employee wages.

  f. On or about March 25, 2008, Ton filed a U.S. Return of Partnership Income, IRS Form 1065, for calendar year 2007, on behalf of B&H, wherein FAZZIO, who signed and prepared the form, fraudulently deducted $811,719 as the cost of goods sold in order to conceal transfers of money from B&H to Heather Marine that were used to pay employee wages.

  g. On or about November 21, 2008, Ton filed a U.S. Corporation Income Tax Return, IRS Form 1120, for fiscal year 2007, on behalf of Abe's, wherein FAZZIO fraudulently deducted $14,818,541 as the cost of goods sold in order to conceal transfers of money from Abe's to Heather Marine that were used to pay employee wages.

  h. On or about February 19, 2009, Ton filed a U.S. Return of Partnership Income, IRS Form 1065, for calendar year 2008, on behalf of B&H, wherein FAZZIO, who signed and prepared the form, fraudulently deducted $1,572,032 as the cost of goods sold in

order to conceal transfers of money from B&H to Heather Marine that were used to pay employee wages.

i. On or about February 20, 2009, Ton filed a U.S. Corporation Income Tax Return, IRS Form 1120, for calendar year 2008, on behalf of Gulf Wells, wherein FAZZIO, who signed and prepared the form, fraudulently deducted $3,895,163 as the cost of goods sold in order to conceal transfers of money from Gulf Wells to Heather Marine that were used to pay employee wages.

j. On or about October 31, 2009, Ton, on behalf of Abe's, filed an IRS Form 941 for the third quarter of 2009, wherein FAZZIO, who prepared the form and certified it as being true and accurate on behalf of Ton, falsely reported that Abe's, Gulf Wells, and B&H paid employees approximately $435,220.50 in wages during that quarter and owed a total of $66,588.73 in tax on those wages.

k. On or about December 15, 2009, Ton filed a U.S. Corporation Income Tax Return, IRS Form 1120, for fiscal year 2008, on behalf of Abe's, wherein FAZZIO, who signed and prepared the form, fraudulently deducted $12,606,384 as the cost of goods sold in order to conceal transfers of money from Abe's to Heather Marine that were used to pay employee wages.

l. On or about January 31, 2010, Ton, on behalf of Abe's, filed an IRS Form 941 for the fourth quarter of 2009, wherein FAZZIO, who prepared the form and certified it as being true and accurate on behalf of Ton, falsely reported that Abe's paid employees approximately $456,864 in wages during that quarter and owed a total of $69,900.20 in tax on those wages.

m.      On or about February 18, 2010, Ton filed a U.S. Return of Partnership Income, IRS Form 1065, for calendar year 2009, on behalf of B&H, wherein FAZZIO, who signed and prepared the form, fraudulently deducted $1,948,860 as the cost of goods sold in order to conceal transfers of money from Abe's to Heather Marine that were used to pay employee wages.

n.      On or about March 1, 2010, Ton filed a U.S. Corporation Income Tax Return, IRS Form 1120, for calendar year 2009, on behalf of Gulf Wells, wherein FAZZIO, who signed and prepared the form, fraudulently deducted $5,133,196 as the cost of goods sold in order to conceal transfers of money from Abe's to Heather Marine that were used to pay employee wages.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-16
## AID OR ASSIST FALSE OR FRAUDULENT DOCUMENT

14.      The allegations contained in paragraphs 1 through 9 and paragraph 13 are incorporated by reference as though fully set forth herein.

15.      On or about the dates hereinafter set forth, in the Eastern District of Louisiana, the defendant,

DOMINICK FAZZIO,

then a resident of Harvey, Louisiana, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of U.S. Employer's Quarterly Federal Tax Returns, Forms 941, either individual or joint, for the taxpayers and calendar years hereinafter specified. The returns were false and fraudulent as to material matters,

in that they under-reported the wages paid to employees of Abe's, Gulf Wells, and B&H in the
amounts hereinafter specified, as FAZZIO then and there knew:

| COUNT | DATE OF OFFENSE | TAXPAYER | QUARTER OF CALENDAR YEAR | AMOUNT OF WAGES REPORTED | AMOUNT OF WAGES NOT REPORTED |
|---|---|---|---|---|---|
| 2 | 11/14/2006 | Abe's | 2nd Quarter of 2006 | $153,620 | $1,256,197.42 |
| 3 | 12/1/2006 | Abe's | 3rd Quarter of 2006 | $143,820 | $1,118,421.71 |
| 4 | 1/31/2007 | Abe's | 4th Quarter of 2006 | $153,600 | $1,348,734.55 |
| 5 | 4/30/2007 | Abe's | 1st Quarter of 2007 | $222,744 | $1,396,118.36 |
| 6 | 7/31/2007 | Abe's | 2nd Quarter of 2007 | $314,655.06 | $1,551,081.76 |
| 7 | 10/31/2007 | Abe's | 3rd Quarter of 2007 | $290,571.04 | $1,537,878.58 |
| 8 | 2/21/2008 | Abe's | 4th Quarter of 2007 | $291,908.75 | $1,591,810.08 |
| 9 | 10/27/2008 | Abe's | 1st Quarter of 2008 | $269,815.38 | $1,633,782.81 |
| 10 | 7/31/2008 | Abe's | 2nd Quarter of 2008 | $261,063 | $1,624,621.08 |
| 11 | 10/31/2008 | Abe's | 3rd Quarter of 2008 | $262,519.67 | $1,628,422.11 |
| 12 | 1/31/2009 | Abe's | 4th Quarter of 2008 | $301,718 | $1,812,306.21 |
| 13 | 6/18/2009 | Abe's | 1st Quarter of 2009 | $356,330 | $1,565,027.58 |
| 14 | 7/31/2009 | Abe's | 2nd Quarter of 2009 | $368,945.50 | $1,587,814.74 |

| 15 | 10/31/2009 | Abe's | 3rd Quarter of 2009 | $435,220.50 | $1,564,342.45 |
| 16 | 1/31/2010 | Abe's | 4th Quarter of 2009 | $456,864 | $1,719,800.62 |

All in violation of Title 26, United States Code, Section 7206(2).

## COUNT 17
## CONSPIRACY

16.     As described in Paragraphs 1 through 9 and 13, which are incorporated by reference as though fully set forth herein, FAZZIO was a practicing accountant and tax preparer residing and doing business in Louisiana.

17.     MARK J. TITUS (hereinafter referred to as "TITUS") was an individual residing and doing business in Louisiana.  At all relevant times, TITUS's sister was married to FAZZIO.

18.     Garner Services, Limited (hereinafter referred to as "GSL") was a construction management company and a Texas limited liability company doing business in the State of Louisiana and other states in the United States.  GSL was registered as a disabled veteran-owned company, a status which allowed GSL to secure certain set-aside contracts from the federal government.

19.     QCI Marine Offshore, L.L.C. (hereafter referred to as "QCI") was a non-Louisiana limited liability company doing business in the State of Louisiana and other states in the United States.  QCI owned approximately 24.5 percent of GSL and was responsible for processing accounts payable for GSL.

20.     E.G. owned approximately 51 percent of GSL and served as its President. Since in or around February 2009, E.G. has served as President of QCI, and prior to that, E.G. served as Vice President of Operations for QCI.

21.     TITUS owned approximately 24.5 percent of GSL, and from on or about January 10, 2006 until in or around October 2011 served as the Chief Operating Officer ("COO") of GSL. As COO, TITUS was responsible for hiring subcontractors to perform work on GSL construction contracts and approving payments to those subcontractors.

22.     TLT Properties, L.L.C. (hereafter referred to as "TLT Properties"), was a limited liability company registered in the State of Louisiana. TITUS was the Registered Agent and Member of TLT Properties and had signatory authority on TLT Properties' checking account with Capital One Bank, account number xxxxxx2743 (hereinafter "the TLT Properties Capital One account").

23.     Property 348, L.L.C. (hereinafter referred to as "Property 348") was a limited liability company registered in the State of Louisiana. TITUS was the Registered Agent and Member of Property 348.

24.     Westside Construction Services, Inc. (hereinafter referred to as "WCS") was a business incorporated in the State of Louisiana. FAZZIO was the Registered Agent, Director, and an officer of WCS, a shell company with no assets, legitimate income, expenditures, employees, or overhead. Official documents identified Rebecca Fazzio, wife of FAZZIO and sister of TITUS, as a director and officer of WCS on official documents. FAZZIO used his residential address as the main business address for WCS.

11

25.     Crescent City Materials and Hauling, L.L.C. (hereafter referred to as "CCMH"), was a limited liability company registered in the State of Louisiana.  FAZZIO was the only Registered Agent and Manager of CCMH, a shell company with no assets, legitimate income, expenditures, employees, or overhead.  CCMH was created by FAZZIO on or about May 20, 2008.

## THE CONSPIRACY

26.     From on or about May 20, 2008, and continuing until on or about May 23, 2011, in the Eastern District of Louisiana and elsewhere, the defendant,

DOMINICK FAZZIO,

did knowingly combine, conspire, confederate, and agree, together with MARK J. TITUS and with other persons, known and unknown to the Grand Jury, to commit an offense against the United States, to wit, to devise and intend to devise a scheme to obtain money and property from GSL by creating and submitting fraudulent invoices for services never rendered to GSL and causing payments to be made by GSL to WCS and CCMH, by means of false and fraudulent pretenses, promises, and representations, knowing that the pretenses, promises, and representations were false and fraudulent when made, in violation of Title 18, United States Code, Sections 1341 and 1343.

## THE OBJECT OF THE CONSPIRACY

27.     The object of the was conspiracy for TITUS, FAZZIO, and others, known and unknown, to obtain fraudulent payments from GSL by submitting false invoices to GSL.

12

## THE MANNER AND MEANS OF THE CONSPIRACY

28.     The manner and means by which the conspiracy was carried out included, among others, the following:

a.      FAZZIO would and did create a shell company and use an existing shell company in order to receive fraudulent payments from GSL.

b.      TITUS would and did create fraudulent invoices on behalf of shell companies owned by FAZZIO.

c.      TITUS would and did submit to GSL those fraudulent invoices, which totaled approximately $1,200,320.

d.      FAZZIO would and did receive into shell companies fraudulent payments from GSL totaling approximately $925,320.

## OVERT ACTS

29.     In furtherance of the conspiracy and to accomplish its object, FAZZIO, TITUS, and others committed the following overt acts, among others, in the Eastern District of Louisiana and elsewhere:

a.      On or about May 20, 2008, FAZZIO created CCMH for the purpose of facilitating the scheme and artifice to defraud GSL.

b.      On or about June 2, 2008, FAZZIO and TITUS created a false and fraudulent CCMH invoice, number 82464, in the amount of $84,200 and submitted it to GSL for payment.

c.      On or about June 11, 2008, FAZZIO and TITUS caused GSL to issue check number 2181 from GSL's checking account with Amegy Bank, NA, account number

xxxxxx4664 (hereinafter "GSL's Amegy Bank account"), to CCMH in the amount of $84,200, in satisfaction of invoice number 82464.

       d.      On or about July 3, 2008, FAZZIO created a bank account for CCMH for the purpose of receiving the fraudulent proceeds obtained from GSL.

       e.      On or about November 28, 2008, FAZZIO and TITUS created a false and fraudulent CCMH invoice, number 82948, in the amount of $108,400, and submitted it to GSL for payment.

       f.      On or about December 10, 2008, FAZZIO and TITUS caused GSL to issue check number 2253 from GSL's Amegy Bank account to CCMH in the amount of $108,400, in satisfaction of invoice number 82948.

       g.      On or about April 11, 2009, FAZZIO submitted a false 2008 U.S. Tax Return Form 1040 (filed jointly) wherein FAZZIO fraudulently reported $141,400 as legitimate expenses in the form of cost of goods sold for CCMH, when in fact that fraudulent reporting was used to conceal the fact that FAZZIO transferred that money to TITUS.

       h.      On or about September 4, 2009, FAZZIO and TITUS created a false and fraudulent WCS invoice, number 609-1483, in the amount of $209,320, and submitted it to GSL for payment.

       i.      On or about October 9, 2009, FAZZIO and TITUS caused GSL to issue check number 2462 from GSL's Amegy Bank account to WCS in the amount of $209,320, in satisfaction of invoice number 609-1483.

j.   On or about January 4, 2010, FAZZIO and TITUS created a false and fraudulent WCS invoice, number 609-1741, in the amount of $762,000, and submitted it to GSL for payment.

k    On or about April 21, 2010, FAZZIO and TITUS caused GSL to issue check number 2623 from GSL's Amegy Bank account to WCS in the amount of $162,000, in partial satisfaction of invoice number 609-1741.

l.   On or about April 21, 2010, FAZZIO and TITUS caused GSL's bookkeeper to mail the above-described check to TITUS via Federal Express.

m.   On or about June 28, 2010, FAZZIO submitted a false 2009 U.S. Individual Income Tax Return Form 1040 (filed jointly) wherein he did not report any income received by CCMH.

n.   On or about October 6, 2010, TITUS sent an email to GSL's bookkeeper instructing him to issue a check to WCS for $175,000 to pay an outstanding invoice, thereby causing GSL to issue check number 1231 from GSL's Amegy Bank account to WCS in the amount of $175,000, in partial satisfaction of invoice number 609-1741.

o.   On or about October 6, 2010, FAZZIO and TITUS, as a result of the above-described email, caused GSL's bookkeeper to mail the above-described check to TITUS via Federal Express.

p.   On or about November 28, 2010, FAZZIO and TITUS created a false and fraudulent CCMH invoice, number 98427, in the amount of $36,400, and submitted it to GSL for payment.

15

q.      On or about January 4, 2011, TITUS sent an email to GSL's bookkeeper instructing GSL to issue a check to CCMH to pay an outstanding invoice, thereby causing QCI, on behalf of GSL, issued check number 2814 from GSL's Amegy Bank account to CCMH in the amount of $36,400, in satisfaction of invoice number 98427.

r.      On or about March 24, 2011, TITUS sent an email to GSL's bookkeeper instructing GSL to issue a check to WCS for $150,000 and instructing that the check be sent overnight to New Orleans, thereby causing GSL to issue check number 2882 from GSL's Amegy Bank account to WCS in the amount of $150,000, in partial satisfaction of invoice number 609-1741.

s.      On or about March 24, 2011, FAZZIO and TITUS, as a result of the above-described email, caused GSL's bookkeeper to mail the above-described check to TITUS via Federal Express.

t.      On or about May 23, 2011, FAZZIO filed an amended 2009 U.S. Individual Income Tax Return Form 1040 wherein he attached a Form Schedule C reporting that CCMH received $15,600 in income during 2009.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 18-20
## MAIL FRAUD

30.      Paragraphs 16 through 25 and paragraph 29 are incorporated by reference as through fully set forth herein.

31.      From on or about May 20, 2008, through on or about May 23, 2011, in the Eastern District of Louisiana and elsewhere, the defendants,

DOMINICK FAZZIO and
MARK J. TITUS,

devised and intended to devise a scheme and artifice to defraud Garner Services, Limited, and to

obtain money and property by means of materially false and fraudulent pretenses,

representations, and promises by creating and submitting to GSL fraudulent invoices for services

never rendered to GSL and its owners and, thereafter, causing payments to be made by GSL to

WCS and CCMH.

    32.    For the purpose of executing the above-described scheme to defraud and deprive,

and attempting to do so, FAZZIO and TITUS knowingly caused to be delivered by the Postal

Service and a private and commercial interstate carrier the following matter:

| COUNT | DATE | SENDER'S LOCATION | RECIPIENT'S LOCATION | CONTENTS OF MAILING |
|---|---|---|---|---|
| 18 | 4/21/2010 | Office of QCI, Pascagoula, MS | Office of GSL, New Orleans, LA | Check in the amount of $162,000 |
| 19 | 10/06/2010 | Office of QCI, Pascagoula, MS | Office of GSL, New Orleans, LA | Check in the amount of $175,000 |
| 20 | 3/24/2011 | Office of QCI, Pascagoula, MS | Office of GSL, New Orleans, LA | Check in the amount of $150,000 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 21-23
## WIRE FRAUD

    33.    Paragraphs 16 through 25 and paragraph 29 are incorporated by reference as

though fully set forth herein.

17

34.     From on or about May 20, 2008, through on or about May 23, 2011, in the Eastern District of Louisiana and elsewhere, the defendants,

DOMINICK FAZZIO and
MARK J. TITUS,

devised and intended to devise a scheme and artifice to defraud Garner Services, Limited, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises by creating and submitting to GSL fraudulent invoices for services never rendered to GSL and its owners and, thereafter, causing payments to be made by GSL to FAZZIO and TITUS.

35.     For the purpose of executing the above-described scheme to defraud and deprive, and attempting to do so, FAZZIO and TITUS knowingly transmitted, and caused to be transmitted, by means of wire communication in interstate commerce, the following electronic mail:

| COUNT | DATE | SENDER | RECIPIENT | CONTENTS OF MESSAGE |
|-------|------|--------|-----------|---------------------|
| 21 | 4/20/2010 | TITUS | GSL's Bookkeeper | Email instructing bookkeeper to issue a check to WCS for $162,000 |
| 22 | 10/6/2010 | TITUS | GSL's Bookkeeper | Email instructing bookkeeper to issue a check to WCS for $175,000 |
| 23 | 3/24/2011 | TITUS | GSL's Bookkeeper | Email instructing bookkeeper to issue a check to WCS for $150,000 and asking that the check be sent overnight |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 24
## CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS

36.     The allegations contained in paragraphs 16 through 25 and paragraph 29 are incorporated by reference as though fully set forth herein.

37.     Capital One Bank is a financial institution with branches located in Louisiana.

38.     CCMH maintained a checking account, number xxxxxx7816, with Capital One Bank (hereinafter "CCMH's Capital One account").

39.     WCS maintained a checking account, number xxxxxx2213, with Capital One Bank (hereinafter "WCS's Capital One account").

40.     Gulf Coast Bank and Trust is a financial institution with branches located in Louisiana.

41.     WCS maintains a checking account, number xxxxx9984 with Gulf Coast Bank and Trust (hereinafter "WCS's Gulf Coast account").

42.     Amegy Bank of Texas is a financial institution with branches located in Texas.

43.     GSL maintains a checking account, number xxxxxx4664 with Amegy Bank (hereinafter "GSL's Amegy Bank account").

### THE CONSPIRACY

44.     From on or about May 20, 2008, and continuing until on or about May 23, 2011, in the Eastern District of Louisiana and elsewhere, the defendants,

DOMINICK FAZZIO and
MARK J. TITUS,

did knowingly combine, conspire, and agree with each other and with other persons, known and unknown to the Grand Jury, to an commit offense against the United States to wit, to knowingly

19

conduct and attempt to conduct financial transactions affecting interstate commerce involving the proceeds of a specified unlawful activity, that is, mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## THE MANNER AND MEANS OF THE CONSPIRACY

45.   The manner and means by which the conspiracy was carried out included, among others, the following:

a.   FAZZIO transferred and arranged for the transfer of funds from WCS and CCMH to TLT Properties and Property 348.

b.   TITUS would and did deposit those transferred funds into the TLT Properties Capital One account and into the Property 348 checking account with Whitney National Bank, account number xxxxxx7825.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 25-29
## MONEY LAUNDERING

46.   The allegations contained in paragraphs 16 through 25, 29 and 36 through 43 are incorporated by reference as though fully set forth herein.

47. On or about the dates listed below, in the Eastern District of Louisiana and elsewhere, the defendants,

DOMINICK FAZZIO and
MARK J. TITUS,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, the transfer of funds in the amounts indicated below, which involved the proceeds of a specified unlawful activity, that is mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| COUNT | DATE | TRANSACTION | PAYOR | PAYEE | AMOUNT |
|-------|------|-------------|-------|-------|--------|
| 25 | 7/18/2008 | Deposit of check 1001 | CCMH | TLT Properties | $25,000 |
| 26 | 3/6/2009 | Deposit of check 1007 | CCMH | TLT Properties | $25,000 |
| 27 | 11/12/2009 | Deposit of check 629 | WCS | TLT Properties | $66,682.91 |
| 28 | 5/28/2010 | Deposit of check 637 | WCS | TLT Properties | $39,850 |
| 29 | 4/25/2011 | Deposit of check 1002 | WCS | TLT Properties | $50,000 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT 30
## FALSE TAX RETURN

48.      The allegations contained in paragraphs 1 through 9, 13, 16 through 25, and 29 are incorporated by reference as though fully set forth herein.

49.      On or about April 11, 2009, in the Eastern District of Louisiana and elsewhere, the defendant,

### DOMINICK FAZZIO,

then a resident of Harvey, Louisiana, did willfully make and subscribe a 2008 U.S. Individual Income Tax Return Form 1040 (filed jointly), which was verified by a written declaration that it was made under the penalties of perjury and which FAZZIO did not believe to be true and correct as to every material matter.  The 2008 Tax Return Form 1040, which was filed with the Internal Revenue Service, stated and contained an amount of $175,400.00 that FAZZIO reported as cost of goods sold on Part I and Part III of his 2008 Form Schedule C, when, as FAZZIO then and there knew, an amount of approximately $141,400 was not, in fact, legitimate and actual expenses for cost of goods sold, and actually represented transfers of funds unrelated to the sale or purchase of goods.

All in violation of Title 26, United States Code, Section 7206(1).

## COUNT 31
## FALSE TAX RETURN

50.      The allegations contained in paragraphs 16 through 25 and paragraph 29 are incorporated by reference as though fully set forth herein.

51.     On or about April 19, 2009, in the Eastern District of Louisiana, the defendant,

MARK J. TITUS,

a resident of New Orleans, Louisiana, did willfully make and subscribe a 2008 U.S. Individual

Income Tax Return Form 1040 (filed jointly), which was verified by a written declaration that it

was made under the penalties of perjury and which TITUS did not believe to be true and correct

as to every material matter. The 2008 Tax Return Form 1040, which was prepared and signed in

the Eastern District of Louisiana and was filed with the Internal Revenue Service, failed to report

$37,625.46 in taxable income that TITUS received from TLT Properties, money which TITUS

then and there knew constituted taxable income.

All in violation of Title 26, United States Code, Section 7206(1).

## COUNT 32
## FALSE TAX RETURN

52.     The allegations contained in paragraphs 16 through 25 and paragraph 29 are

incorporated by reference as though fully set forth herein.

53.     On or about January 16, 2010, in the Eastern District of Louisiana, the defendant,

MARK J. TITUS,

a resident of New Orleans, Louisiana, did willfully make and subscribe a 2009 U.S. Individual

Income Tax Return Form 1040 (filed jointly), which was verified by a written declaration that it

was made under the penalties of perjury and which TITUS did not believe to be true and correct

as to every material matter. The 2009 Tax Return Form 1040, which was prepared and signed in

the Eastern District of Louisiana and was filed with the Internal Revenue Service, failed to report

$115,613.00 in taxable income that TITUS received from TLT Properties, money which TITUS then and there knew constituted taxable income.

All in violation of Title 26, United States Code, Section 7206(1).

## NOTICE OF MAIL FRAUD AND WIRE FRAUD FORFEITURE

54.     The allegations of Counts 17 through 23 are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18 United States Code, Sections 371, 1341, 1343, and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

55.     As a result of the offenses alleged in Counts 1 through 4, the defendants,

DOMINICK FAZZIO and
MARK J. TITUS,

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Sections 371, 1341, and 1343, including but not limited to:

      a.     $925,320 in United States currency and all interest in proceeds traceable thereto;

      b.     the Government specifically provides notice of its intent to seek a personal money judgment against the defendants in the amount of the fraudulently obtained proceeds.

56.     If any of the property subject to forfeiture as a result of any act or omission of the defendants:

      a.     cannot be located upon the exercise of due diligence;

24

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above-forfeitable property.

57.    All in violation of Title 18, United States Code, Sections 371, 1341, 1343, and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

## NOTICE OF MONEY LAUNDERING FORFEITURE

58.    The allegations of Counts 24 through 29 are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18 United States Code, Sections 982(a)(1), 1956(a)(1)(B)(I), and 1956(h).

59.    As a result of the offenses alleged in Counts 24 through 29, the defendants,

DOMINICK FAZZIO and
MARK J. TITUS,

shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in the aforementioned offenses and all property traceable to such property in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1956(h), including but not limited to:

25

a.      $925,320 in United States currency and all interest in proceeds traceable

thereto;

b.      the Government specifically provides notice of its intent to seek a personal

money judgment against the defendants in the amount of the fraudulently obtained proceeds.

60.    If any of the property subject to forfeiture as a result of any act or omission of the

defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the

above-forfeitable property.

All in violation of Title 18, United States Code, Section 982(a)(1), 1956(a)(1)(B)(i), and

1956(h).

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

JACK SMITH
Chief
Public Integrity Section
Criminal Division
U.S. Department of Justice

By:  _____
Peter M. Koski
Deputy Chief
Public Integrity Section

Gregory M. Kennedy
Assistant U.S. Attorney

Menaka S. Kalaskar
Trial Attorney
Public Integrity Section

Brian A. Lichter
Trial Attorney
Public Integrity Section

New Orleans, Louisiana
October 11, 2012

FORM OBD-34

No. 11-157 "C"

UNITED STATES DISTRICT COURT

___Eastern___ District of ___Louisiana___

___Criminal___ Division

THE UNITED STATES OF AMERICA

vs.

DOMINICK FAZZIO
MARK J. TITUS

SECOND SUPERSEDING INDICTMENT

SECOND SUPERSEDING INDICTMENT FOR CONSPIRACY TO
COMMIT MAIL FRAUD AND WIRE FRAUD, MAIL FRAUD, WIRE
FRAUD, MONEY LAUNDERING CONSPIRACY, MONEY LAUNDERING,
AND FALSE STATEMENTS ON TAX RETURN

| VIOLATIONS: 18 U.S.C. § 2 | 18 U.S.C. § 1956(h) |
|---|---|
| 18 U.S.C. § 371 | 18 U.S.C. § 1956(a)(1)(B)(i) |
| 18 U.S.C. § 1341 | 26 U.S.C. § 7206(1) |
| 18 U.S.C. § 1343 | 26 U.S.C. § 7206(2) |

A true bill.

_____
Foreperson

Filed in open court this _____ day, of
_____ A.D. 2012.

_____
Clerk

Bail, $ _____

GREGORY M. KENNEDY
Assistant United States Attorney